GERTRUDIS ORTIZ RIVERA, demandante y recurrente, *v.* JOSÉ AGOSTINI ET AL., demandados y recurridos.

Número: R-64-180    Resuelto: 26 de marzo de 1965

188

*José Aulet,* abogado de la recurrente; *Rivera Zayas, Rivera Cestero & Rúa,* abogados de Alma Realty Corporation.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Gertrudis Ortiz Rivera interpuso demanda de daños y perjuicios en la Sala de San Juan del Tribunal Superior contra José A. Agostini, José D. Reyna y Alma Realty Corp. en 18 de junio de 1962. Los tres demandados quedaron emplazados el 20 de junio. El 9 de agosto la co-demandada Alma Realty Corp., contestó en los méritos negando los hechos, además sometió interrogatorios a la demandante. Ésta contestó dichos interrogatorios el 28 de septiembre de 1962. En 28 de diciembre renunció la representación legal de Alma Realty y asumieron dicha representación los abogados Rivera Cestero y Rúa.

En 4 de febrero de 1963 contestó la demanda el co-demandado José D. Reyna negando todos los hechos. En 12 de febrero se autorizó y se presentó una demanda enmendada que incluyó en adición a los demandados Max Cohen y Lincoln Realty Corp. Estos últimos fueron emplazados el 14 de febrero.[1] En 5 de marzo de 1963 Alma Realty Corp. contestó en los méritos la demanda enmendada negando todos los hechos. El 18 de marzo Lincoln Realty Corp. contestó en los méritos negando los hechos. En 21 de marzo Max Cohen compareció y solicitó la nulidad de su emplazamiento. No hay orden en los autos pero de la minuta de 15 de abril de 1963 surge que la moción sobre nulidad de emplazamiento fue oída y se decretó dicha nulidad. A partir del 5 de abril de 1963 no hay otras constancias en los autos, hasta el 17 de enero de 1964 en que aparece una Orden dictada de oficio por el Juez, y notificada el día 20 de enero, haciendo constar que no habiéndose efectuado trámite alguno durante los últimos 6 meses se requería de las partes que expusieran razones por las cuales no debía archivarse el caso.

En el término concedido para exponer razones, compareció la demandante por su propio derecho e hizo constar que su abogado, el Lcdo. Valentín Esteves, había fallecido; que el caso le había sido entregado a ella el día anterior, 29 de enero, y solicitó del Tribunal un término de 60 días para conseguir otro abogado que se hiciera cargo del asunto. En dicho escrito hizo la siguiente súplica adicional: "Se solicita además del Honorable Tribunal que señale este caso para vista, a la mayor brevedad posible, ya que para la fecha que sea señalado la demandante se compromete a hacer las gestiones y conseguir un nuevo abogado." Esta moción fue notificada a las partes. Al calce de la misma puso la siguiente nota: "Urgente: Pasar al Honorable Juez Administrador." El

---

[1] Se alegó que los cinco demandados, como ingeniero, contratista y dueños, construyeron un edificio, y que todos ellos juntos, o alguno de ellos responsable de la construcción, sin que la demandante pudiera precisar cuál era, abrieron una zanja en la cual sufrió daños la demandante.

Tribunal accedió por Orden de 4 de febrero de 1964 a la anterior moción.

El 17 de febrero compareció nuevamente la demandante por su propio derecho en un escrito con el objeto de informar su dirección a fin de que le fueran notificadas todas las determinaciones en relación con su caso mientras ella hacía gestiones para localizar su nuevo abogado. El 28 de mayo de 1964 Alma Realty Corp. solicitó el archivo del asunto a base de la Orden de 17 de enero, por razón de haber transcurrido los 60 días pedidos por la demandante para obtener abogado y haber ésta dejado de proseguir el pleito. Días después, en junio 3, 1964, compareció el abogado José Aulet e informó al Tribunal y a las partes el haberse hecho cargo de la representación legal de la demandante. En 19 de junio, con posterioridad a esta comparecencia, se celebró la vista de la moción de Alma Realty, y en 24 de junio de 1964 la Sala sentenciadora dictó la siguiente:

"SENTENCIA

Apareciendo de los autos que con fecha 17 de enero de 1964 se requirió de la demandante que dentro del término de diez (10) días a contarse de la fecha en que fuera notificada dicha orden expusiera por escrito las razones por las cuales este caso no debía ser archivado y que con fecha 7 de febrero de 1964 la demandante solicitó al Tribunal se le concediese un término de sesenta (60) días para conseguir nueva representación legal en el mismo ya que su abogado había fallecido lo cual le fue concedido por el Tribunal con fecha 4 de febrero de 1964 y que ha pasado con exceso dicho término sin que la demandante haya efectuado trámite alguno en esta acción, el Tribunal a tenor con la Regla 39.2 de las de Procedimiento Civil vigentes, dicta sentencia desestimando la demanda con imposición de costas a la parte demandante y sin honorarios de abogados."

En 30 de junio la demandante solicitó la reconsideración de dicha sentencia e insistió en que ella había solicitado el señalamiento del caso, reconsideración que le fue denegada

por Resolución de 5 de agosto de 1964. Expedimos auto de revisión porque nos ha parecido que la demandante en este caso fue tratada con singular rigor en tanto ha podido estar envuelta la discreción de la Sala sentenciadora y, además, había sido resuelto el caso erróneamente como cuestión de derecho.

Al implantarse la reforma judicial de 1952, uno de los cambios básicos en el funcionamiento del Tribunal de Primera Instancia fue el abandono del viejo sistema en virtud del cual aquellos casos en donde ya se había trabado y estaba madura la controversia de hecho no se señalaban en los méritos hasta tanto cualquiera de las partes compareciera a una vista que se conocía como la lectura del calendario y pidiera el señalamiento o la inclusión del caso para juicio. De no pedirse señalamiento, no habría acción posterior. En virtud de la *Regla* 5 de las Reglas para la Administración del Tribunal de Primera Instancia adoptadas por este Tribunal y en vigor desde el 1ro. de febrero de 1953, se dispuso entonces que el Juez Administrador de cada Sala del Tribunal Superior prepararía periódicamente un calendario de todos los casos de naturaleza civil que estuvieran listos para juicio, y el Secretario debía notificar del señalamiento a las partes por lo menos 15 días antes de la fecha en que el juicio habría de celebrarse. De acuerdo con la *Regla* 4, el Juez Administrador debe preparar también periódicamente un calendario para la celebración de conferencias con antelación al juicio en casos civiles y fijará la fecha y hora para llevar a cabo dichas conferencias. El Secretario debe notificar a las partes de ese acto.

La enmienda que sufrió la *Regla* 5 efectiva el 1ro. de enero de 1961 es aún más explícita, al disponer que se mantendrá en cada Sala un calendario permanente y continuo en el que el Juez Administrador señalará para vista *sin necesidad de solicitud al efecto*, todos los casos civiles contenciosos que estén listos para juicio; debiendo el Secretario notificar el

señalamiento a las partes por lo menos 15 días antes de la fecha de la vista.

■ Según el expediente, el 5 de abril de 1963 todos los demandados, excepto Cohen cuyo emplazamiento se anuló, habían sido emplazados. La demanda estaba contestada en los méritos por tres de ellos y la controversia trabada. Se trataba de un caso en que unos demandados podrían ser responsables y otros no. Desde dicha fecha y durante el alegado período de inactividad hasta el 17 de enero de 1964 era deber de la Sala sentenciadora, a tenor de las *Reglas* 4 y 5 de Administración, el señalar este caso para conferencia con antelación al juicio primero, y para su vista en los méritos después. Por tal razón, la Orden de oficio de 17 de enero de 1964 era improcedente en derecho, e improcedente la sentencia de archivo dictada en consecuencia de ella.

■ En la esfera de la sana discreción, el récord demuestra que el caso fue rápida y diligentemente litigado por la demandante mientras vivió su abogado. Luego, sin asistencia de abogado, no puede esperarse de ella más diligencia en demostrar su interés en mantener la acción. Aun cuando no venía obligada a hacerlo, inclusive pidió al Tribunal que le señalara su caso a la mayor brevedad posible. Cuando se celebró la vista de la moción de archivo, hacía ya dos semanas que un abogado había comparecido en autos en su representación. Aparentemente todos estos hechos fueron ignorados por la co-demandada Alma Realty Corp. al insistir en el archivo por alegada falta de diligencia, y fueron pasados por alto por la Sala sentenciadora al archivar el caso. Hubo aún más rigor cuando, habiéndosele llamado la atención a la Sala de esas gestiones en una moción de reconsideración, ésta fue denegada.

En incidentes de archivo de litigios de oficio por ausencia de gestión, la tradicional actitud del Tribunal de Primera Instancia ha sido una de liberalidad a fin de que el proceso continúe. En buena administración de justicia esa tradición

es buena, ante los valores sociales que pueden ser afectados. Apartarse drásticamente de la norma seguida ante un determinado litigante, sin que existan razones por demás justificadas para ello, como no las hay en este caso, puede ser la negativa de un trato igual y, en consecuencia, de un trato justo.

Es deseable que los Jueces de primera instancia conserven la mayor libertad y discreción para afrontar los problemas que tocan al efectivo funcionamiento del Tribunal y a la más rápida disposición de los asuntos litigiosos compatible con la ley y con los derechos del ciudadano. Por ello este Tribunal de ordinario observa una norma auto-limitativa de su facultad de intervenir en esta esfera de la función de los jueces. Tan recientemente como en *Ramírez de Arellano* v. *Srio. de Hacienda*, 85 D.P.R. 823 (1962), en una situación que guarda alguna semejanza con la presente, dijimos [830]: "No insinuamos siquiera que la Sala de instancia no pudo haber impuesto alguna sanción en la situación de este caso. Con su facultad de aplicar correctivos apropiados, y de conducir los pleitos de la manera que a su buen discernimiento sea de mayor efectividad, no habremos de intervenir, ni sería aconsejable que interviniésemos." Y más adelante: "Aunque esta es un área de funcionamiento de la Sala sentenciadora en que habremos de intervenir lo menos posible, en las circunstancias presentes nos vemos obligados a dejar sin efecto la sentencia recurrida . . . ."

■ Repetimos una vez más que ésa es nuestra norma y que el buen discernimiento, el buen sentido y la buena discreción de los jueces de instancia en el manejo y tramitación de los asuntos judiciales no ha de sufrir menoscabo en nuestro foro. De cuando en cuando, sin embargo, nos llegan casos en que la buena discreción y la justicia parecen señalar hacia una dirección distinta a como fueron ejercidas y aplicadas y entonces, y a pesar de nuestra norma de abstención, resulta ser nuestro deber insoslayable corregir lo que hubiere de ex-

ceso o de injusto en el uso de esa discreción, para que no se lesionen derechos que estamos llamados a proteger.

*Por los fundamentos antes dichos, se revoca la sentencia que ordenó el archivo por falta de acción de este litigio y se devuelve el caso a la Sala sentenciadora para que continúen los procedimientos de manera compatible con lo aquí expresado.*